IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

GEORGE TYLE SULLIVAN,                                                                PLAINTIFF
ADC #610057

v.                                         4:20CV00740-KGB-JTK

VETIS S. MALONE, et al.                                                             DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the

District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## I. Introduction

Plaintiff George Sullivan, a state inmate incarcerated at the Varner Super Max Unit of the Arkansas Division of Correction (ADC), filed this pro se action pursuant to 42 U.S.C. § 1983, alleging excessive force, failure to protect, denial of medical care, and retaliation by Defendants. (Doc. No. 2) On January 26, 2021, this Court dismissed the following claims: failure to protect, violation of policies, and interference with the grievance process. (Doc. No. 22)

This matter is now before the Court on the Motion for Summary Judgment, Brief in Support, and Statement of Facts, filed by Defendants Malone and Carroll. (Doc. Nos. 35-38). Plaintiff filed a response to the Motion (Doc. No. 42), and Defendant filed a reply. (Doc. No. 45)

## II. Complaint (Doc. No. 2)

Plaintiff alleged that on February 21, 2019, Defendant Malone physically assaulted him with a heavy stainless steel bar which caused injury to his left hand. (p. 4) Malone also intentionally failed to call medical or notify others of the incident, and tried to cover up the incident. (p. 5) Plaintiff submitted an emergency sick call request and a grievance and was treated by nurses the

next day, February 22, 2019. (pp. 7-8) Carroll failed to process the grievance and retaliated against Plaintiff by directing Malone to charge Plaintiff with a disciplinary violation. (pp. 8-9) Plaintiff requested damages and unspecified injunctive relief against Defendants in both their official and individual capacities. (pp. 2, 19-20)

### III. Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A. Defendants' Motion

#### 1) Official Capacity Immunity

The Court initially agrees with Defendants that Plaintiff's monetary claims for relief against them in their official capacities are barred by sovereign immunity. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 65-66 (1989); Murphy v. State of Arkansas, 127 F.3d 750,

754 (8th Cir. 1997).

### 2) Qualified Immunity

Defendants also ask the Court to dismiss Plaintiff's claims against them in their individual capacities based on qualified immunity, which protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1]   Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

In support of the Motion, Defendants presented a copy of Plaintiff's deposition testimony (Doc. No. 35-1), Declarations (Doc. Nos. 35-2 - 35-4), and the official documents submitted following the incident, including Plaintiff's disciplinary charge and medical records. (Doc. Nos. 35-5 – 35-7)

        a)        **Plaintiff's deposition testimony (Doc. No. 35-1)**

Plaintiff testified he was housed in restrictive housing in the Unit on February 21, 2019. (pp. 4-5) Defendant Malone picked up his breakfast tray about 5 a.m. and when Plaintiff asked her for more juice and coffee, she refused. (Id.) At the time, his food trap was open and his hands were on top of the trap. (Id.) Malone told him to move his hand and then took the bar used to close the trap and hit the top of the trap, which hit his left pinky finger. (Id.) Plaintiff thought she was playing and didn't take it seriously. (Id.) Plaintiff grabbed his hand and told her she hit him and she laughed and said that next time he would move his hand. (Id.) He then allowed her to close the trap and she later opened it back up and gave him juice and coffee and apologized to him. (Id.) Plaintiff further stated that because the trap was located low on the door, he had to get on his knees to communicate with Malone through the trap, and that he would not have been able to reach her when she walked up to pick up his tray. (p. 6) Inmates are not permitted to open and close the traps themselves, and he admitted that he held down the trap when she went to close it, because he wanted more juice. (p. 7) He stated that she did not give him a direct order, just stated for him to let her close the trap, and when he asked for more juice and coffee, she told him to move his hands so she could close the trap. (Id.) He told her he wasn't trying to hold down the trap, and then she hit his hand, although she said she hit him accidentally when she tried to close the trap with the bar. (p. 8) Yet, when he asked her to call someone, she laughed and said that the next time he would move his hand. (Id.) Plaintiff pulled his hand back immediately, but she hit his pinky, ring finger and knuckle, and they

5

swelled up. (Id.)

Plaintiff then asked her to call the nurse and give him ice and she said no and laughed. (p. 9) He did not know whether she saw that he had a cut on his knuckle or that it was swollen. (Id.) Nurse King later came by his cell to bring him medications and when he showed her his hand, she told him to file a sick call, which he did. (p. 11) He was seen by medical the next day, February 22, 2019, and they wrapped his hand and buddy-taped the injured finger to another finger with a popsicle stick to support it. (p. 14) The pinky hurt and he could not bend it and a gash went across his pinky and ring finger. (Id.) The infirmary gave him medication and he went to treatment call on February 23rd and then he was x-rayed on the 25th. (Id.) He also received a disciplinary and was found guilty of one charge and lost class and restrictions and was sentenced to punitive. (p. 12)

Plaintiff disagreed with Malone's statement that at the time of the incident he reached out of the trap to try and grab her breast, but he admitted that he could receive a disciplinary charge for not moving his hand so she could close the trap. (p. 15) He also admitted he had received such a charge in the past. (Id.) Plaintiff filed a grievance, and on February 25, 2019, Defendant Carroll called him to his office to sign a witness statement. (p. 15) Although corrective action was taken against Malone for not immediately reporting the incident to her supervisor, the disciplinary was not issued until after the grievance was filed. (Id.) Plaintiff claimed that since he named her in the grievance she should not have been allowed to write the disciplinary, and his retaliation claim is that she wrote the disciplinary after he filed the grievance. (p. 16) His retaliation claim against Carroll is that he held Plaintiff's grievance and allowed the disciplinary charge to be processed first in retaliation. (p. 17) After Plaintiff filed the grievance against her, Malone claimed he tried to grab her breast. (Id.) He claimed he could not bend the pinky finger after the incident, although

6

the x-ray said it was not broken. (p. 19) The gash on the pinky was not deep, and although it bled a little at first, tissue stopped the bleeding. (Id.)

### b) Declarations (Doc. Nos. 35-2 – 35-5)

Defendant Malone stated that on February 21, 2019, she conducted chow in Plaintiff's cellblock about 5:10 a.m. (Doc. No. 35-2) As she opened the trap door of his cell, he reached out and tried to grab her breast. (Id.) As a reaction, she hit his left hand with the bar used to open the trap door, to prevent him from grabbing her, and not to cause harm. (Id.) He then pulled back his hand and she closed the door, and she did not notice injury to his hand or pinky finger. (Id.) As she closed the door, he stated for the first time that he was just trying to get some more coffee or juice, but she believed he was trying to grab her breast. (Id.) She then backed away and continued with chow, and he did not say he was injured and did not request to be seen by Medical. (Id.) On February 25, 2019, she reported the incident to her supervisor, Lt. Joseph Bivens, and completed an incident report and use of force form. (Id.) She also wrote a major disciplinary against him for failure to obey orders, battery, and assault. (Id.) She did not write the disciplinary out of retaliation, as she was not aware at that time that he had filed a grievance against her. (Id.)

Lt. Bivens stated that when Malone notified him of the incident on February 25, 2019, he instructed her to complete an incident report and use of force report. (Doc. No. 35-3) He then prepared an incident packet which included the reports, a copy of the disciplinary charge, the February 25, 2019 medical encounter of Plaintiff, and photographs. (Id.) In addition, he prepared an incident report summary and referred the summary to Defendant Carroll on February 26, 2019. (Id.)

Defendant Major Carroll reviews major disciplinary charges prior to a hearing and on February 28, 2019, he referred the disciplinary report he received from Bivens to a hearing officer.

(Id.) A hearing was held on March 4, 2019, and Plaintiff was found guilty of assault, based on Malone's incident report. (Id.) The charge was upheld on appeal, and Carroll added that he did not instruct Defendant Malone to write the disciplinary charge against Plaintiff. (Id.) A video from the time of the incident shows Malone located in front of Plaintiff's cell about 5:05 a.m., but the chow tray cart blocked the view. (Id.)

### c)     Reports

According to the Incident Report (dated February 21, 2019), Malone conducted chow on February 21, 2019 about 5:10 a.m., and as she opened the trap of Sullivan's cell, he reached out and tried to grab her breast. (Doc. No. 35-5, p. 2) As a reaction, she hit his left hand with the bar to prevent him from grabbing her and then stepped back from the cell. (Id.) Sullivan knew his actions were a direct violation of ADC rules, and disciplinary action was taken and photos and video footage were taken and downloaded. (Id.)

Based on the incident, Malone issued a major disciplinary against Sullivan, charging him with failing to obey a direct order, assault, and battery. (Doc. No. 35-6) The incident report summary prepared by Lt. Bivens included Malone's statement, a photograph of Plaintiff's hands, the disciplinary packet, Plaintiff's witness statement, and others. (Doc. No. 35-7) According to the summary, Bivens referred the action to the chief security officer (Defendant Carroll) on February 26, 2019, and indicated that corrective action was taken against Malone for failing to advise her supervisor of the incident. (Id., p. 3) Carroll referred the report to the Deputy/Assistant Warden, who referred it to the Warden, and then to Internal Affairs and an investigator was assigned on March 14, 2019. (Id.) The photograph does not reflect any visible injuries, but blood can be seen on the open trap door. (p. 4) The Condensed Health Services Encounter dated February 25, 2019, stated that Plaintiff's left pinky had a small, scabbed laceration with slight edema, no bleeding, no

bruising and no drainage or sign of infection. (p. 8) Plaintiff reported pain when touching or using his finger and had full range of motion. (Id.) No medical treatment was needed at the time. (Id.)

The report of the March 4, 2019 disciplinary hearing indicated that Plaintiff stated he held down his trap and asked Malone for juice and she told him to move his hand. (Doc. No. 35-8) Malone hit the trap with the bar and hit his left hand and did not write him up until after he wrote a grievance. (Id.) Plaintiff was found guilty of assault, and was sentenced to thirty days punitive isolation, sixty days restrictions, and reduced to class IV. (Id.) The hearing officer accepted the staff report and reviewed witness statements, and his findings were upheld on appeal. (Id.) According to the Security Log, Malone's shift ended at 6:10 a.m. on that date. (Doc. No. 33) And the video does not show the details of the incident, as the view is blocked by the food tray cart. (Doc, No., 34)

### B)   Plaintiff's response (Doc. No. 42)

Plaintiff stated sufficient disputes of fact exist concerning whether Malone intentionally hit him with the bar unreasonably and whether she intentionally subverted records to justify her actions. He also stated that Malone failed to provide him with any medical assistance and admitted that she hit him. He stated he submitted a sick call on February 21, 2019, and was seen by a nurse on February 22, 2019, who provided Naproxen for pain. Plaintiff complained that Malone failed to document or report the facts of the incident before the end of her shift, knowing that she would not return to work until 6 p.m. on February 25, 2019. Based on these facts, her actions were malicious and sadistic. According to Plaintiff, Carroll failed to follow ADC due process procedures by knowingly processing the disciplinary report after Plaintiff filed the grievance against Malone, which also violated policy. In support of his response, Sullivan included Declarations that Carroll held onto the grievance to give Malone a "tactical advantage" when she submitted the disciplinary

charges against him, which were backdated. (p. 27) Plaintiff also included the Condensed Health Service Encounter from February 22, 2019, in which he was quoted as as stating, "She was trying to close my trap and my finger was in the way. I don't think she meant to which is why I didn't write her up. It hurts." (p. 30) At that time, no acute distress was noted, Plaintiff could not bend his pinky, but denied numbness or tingling, and an x-ray was later ordered. (pp. 3, 33) Plaintiff also included copies of several grievances he filed, the ADC use of force policies, the Internal Affairs report of April 22, 2019, in which Malone was exonerated, and the Director's decision upholding the disciplinary on appeal.

### C) Defendants' Reply

Defendants state that Plaintiff cannot rely on speculation, inadmissible evidence, or unsupported conclusions to create a genuine issue of material fact, citing <u>Aucutt v. Six Flags Over Mid-America, Inc.</u>, 85 F.3d 1311, 1317 (8th Cir. 1996). They note that Plaintiff admitted that he held down the trap door because he wanted some coffee or juice, that Malone instructed him to move his hand, that he refused her request, and that at the time he believed she attempted to hit the trap door and accidentally hit his hand in the process. Further evidence is his statement in the medical record that "I don't think she meant to which is why I didn't write her up." (Doc. No. 42, p. 30) Defendants also state that Plaintiff cannot establish an injury beyond the de minimis threshold, and that Plaintiff conceded he did not know whether Malone noticed an injury to his hand that day. Finally, Defendants state Plaintiff cannot establish retaliation, because he was ultimately found guilty based on some evidence and the hearing officer's findings were upheld at every stage of the appeals process.

### D) Analysis

To support an excessive force claim, Plaintiff must allege and prove that force was not

applied in a good-faith effort to maintain or restore discipline, but rather, maliciously and sadistically to cause harm. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). Factors to be considered in determining the reasonable use of excessive force include whether there was an objective need for force, the relationship between the need and the amount of force used, the threat reasonably perceived by the officers, efforts the officers used to temper the severity of their response, and the extent of the inmate's injury. Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002). In Wilkins, the United States Supreme Court held that the absence of serious injury is not irrelevant to an excessive force inquiry, but is a factor which could suggest whether the force could "plausibly have been thought necessary" and might also provide an indication of the amount of force applied. 559 U.S. at 37 (quoting Hudson v. McMillian, 503 U.S. at 7). While a "limited application of cap stun to control a recalcitrant inmates constitutes a 'tempered response by prison officials' when compared to other forms of force, ... not every instance of inmate resistance justifies the use of force." Treats, 308 F.3d at 872 (quoting Jones v. Shields, 207 F.3d 491, 496 (8th Cir. 2000)).

In Burns v. Eaton, an inmate who refused to submit to hand restraints when returning from his shower was sprayed with chemicals when he responded by throwing a shampoo bottle at the officer and spitting at him. 752 F.3d 1136, 1140 (8th Cir. 2014) The Court held that the use of force was appropriate and did not violate the Eighth Amendment, and noted that because the inmate refused the officer's orders, the officer "faced a recalcitrant inmate." Id. at 1140. In addition, in Sylvester v. Kelley, an inmate who failed to remove his hand from the trap despite two direct orders, alleged that an officer struck his hand twice with the trap bar. No. 5:18cv00120-JM-JTK, 2019 WL 3244590 (E.D.Ar. 2019) The Court held that Plaintiff presented no evidence that the officer acted sadistically to cause harm, but that he acted only in good faith to maintain or restore discipline. Id. *3.

11

In this case, Plaintiff admitted that he held open the trap, that he disregarded Malone's instructions to move his hand, and he also stated on more than one occasion that he did not think she intended to harm him by hitting his hand with the trap door bar. He also admitted that he was provided medical care the next day, and that x-rays were taken a few days later. Even assuming his claim that he did not attempt to grab her breast, Plaintiff does not provide any evidence to show that Malone's actions were unreasonable, maliciously and sadistically to cause harm, or unrelated to the need to close the trap to maintain security. Furthermore, the minimal injury suffered can be considered as evidence that the amount of force she used was minimal. Wilkins, 559 U.S. at 37. Plaintiff admitted that the gash on his pinky was not deep, and that it bled a little at first but not a lot, and that the x-ray showed no evidence of a fracture. Therefore, based on the undisputed facts and evidence, the Court finds that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation or a constitutional or statutory right by Defendant Malone.

In addition, to support a retaliation claim, Plaintiff must allege and prove "that he engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against [him] that would chill a person of ordinary firmness from engaging in that activity." Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir. 2007).   However, a retaliation claim is precluded if the alleged retaliatory conduct violation was issued for the actual violation of a prison rule, by the showing of "some evidence" that the inmate actually committed a rule violation.   Hartsfield v. Nichols, 511 F.3d 826, 829 (8th Cir. 2008).   And "a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker."   Id. at 831.   See also Sanders v. Hobbs, 773 F.3d 186, 190 (8th Cir. 2014).

In this case, Plaintiff claims that Malone retaliated because she filed the disciplinary charge after he filed his grievance. Yet, he does not dispute that the incident occurred on a Friday afternoon shortly before Malone's shift ended, and that she wrote the disciplinary charge against him on the Monday evening she returned to work. Even if she violated policy by not immediately recording the Friday incident (for which she was reprimanded), he provided no proof that he did not violate a prison rule. In fact, he admitted that he held open the trap door even after she asked him to move his hand. Plaintiff also provides no additional evidence that Defendant Carroll retaliated against him by holding the grievance until the disciplinary charge was filed, and "some evidence" was presented to support that Plaintiff committed a rule violation. Therefore, the Court finds as a matter of law that Defendants Malone and Carroll acted reasonably under the circumstances and that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, establish retaliation.

## IV. Conclusion

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. No. 35) be GRANTED, and Plaintiff's Complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 3rd day of July, 2021.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE